## WAHL v. BROWN & SHARPE CO.

### No. 13505.

District Court, N. D. Illinois, E. D.
Feb. 20, 1935.

Zabel, Carlson & Wells, of Chicago, Ill., for plaintiff.

Chindahl, Parker & Carlson, of Chicago, Ill., and Fred O. Fish, of Boston, Mass., for defendant.

LINDLEY, District Judge.

Plaintiff alleges infringement of claim 2 of patent to Wahl No. 1,487,189, as follows: "In a clipper, the combination of a stationary clipper blade, a movable clipper blade cooperating therewith, an electro-magnetic blade moving mechanism carried by the carrier for the stationary clipper blade, and a yielding driving connection between the blade moving mechanism and the movable clipper blade."

This patent has previously been in suit in this jurisdiction. In Wahl v. N. E. Norstrom, etc., Co. (D. C.) 19 F.(2d) 544, the claim was held valid upon grounds there fully stated. The decree was affirmed in (C. C. A.) 27 F.(2d) 635. To the same effect is Norstrom v. Wahl (C. C. A.) 27 F.(2d) 637, affirming an order for a temporary injunction. A modified form of the device, held to infringe in the case first mentioned, was the subject-matter of later litigation resulting in a like decree, which was affirmed in (C. C. A.) 39 F.(2d) 791; and a finding of contempt growing out of the same litigation was approved in Norstrom v. Wahl (C. C. A.) 41 F.(2d) 910.

In view of these adjudications, defendant does not now deny validity except to insist that if the claim is to be construed as covering a device such as that now complained of, it is void. Defendant denies infringement.

Plaintiff's invention covers an electric device for clipping hair, including a stationary clipping blade, with which a moving clipping blade co-operates in achieving a shearing effect. The movable blade is actuated by an electro-magnetic blade-moving mechanism, which is carried or supported by the carrier of the stationary blade. This mechanism includes an electric magnet and armature, and is thus distinguished from motor-driven and "make and break" varieties of such devices. Finally, and essential to the commercially successful operation of the clipper, is a yielding driving connection, the instrumentalities of which are interposed between the blade-moving mechanism and the movable blade.

In one of the decisions above cited, Judge Evans, 39 F.(2d) 791, said:

"The patent was recognized as one entitling its claims to a broad construction. * * *

"The driving connection between the movable blade and the blade moving mechanism must be a yielding one, otherwise it would not successfully operate when moving at a rate of 120 cycles per second. Any 'yielding driving connection' answers the calls of this element. We find nothing in the prior art which would justify a narrow or limited construction of this means. * * *

"In fact, it seems impossible that a clipper could successfully operate where the speed of the movable blade is so high without there being a yielding driving connection. * * * Appellee makes use of springs. But the spring may be differently located. * * *

"In disposing of the case, the district judge well observed:

" 'The defendant's contention is that the court has previously excluded from the patentee's invention anything other than a yield in the pressing of the blades together. The court did not intend so to imply in its prior opinion, and does not believe the plaintiff's patent can be so limited. That this driving connection, in order to be of value, must permit within limits a certain universal adjustment, which has a slight tendency to yield, is apparent from an examination of the plaintiff's patent and original device.' "

The question submitted, then, is whether defendant's device is within the claim so construed; or if the device transcends the limits of the previously adjudicated definition of plaintiff's invention, is the claim capable of validity, when interpreted to cover such wider type of construction?

The device of defendant includes a stationary clipper blade, carried by a member which is integral with an electro-magnetic blade-moving mechanism, consisting of a magnet and armature. What is asserted to be the equivalent of the patentee's "yielding driving connection" consists of a blade-actuating arm, reaching from the movable blade to a point where it contacts the armature in operation, mounted upon a comparatively stiff spring, which, in turn, is mounted upon or made integral with the armature. This, counsel terms "a floating mounting." Contributing to the successful result are a coiled spring located near the armature, bearing upon the arm, and two other springs, contacting the movable blade and paralleling the longitudinal axis of the device. It is clear from the evidence that these springs made possible a yielding movement of the movable clipper blade at the end of the arm in all directions in orbits substantially at right angles to the longitudinal center line of the arm. This result is the desirable yielding connection, permitting within limits a certain universal adjustment which has a slight tendency to yield, so essential to success, described by the patentee and defined by the court in previous cases, unless it can be said that the invention is limited to specific forms of yielding connec-

tion other than that used by defendant. The latter claims, in this connection, that the pressure is, in its device, applied at different points and in different manners from those utilized in plaintiff's corresponding element.

In plaintiff's patent, the device shown in the drawings includes, as a yielding connection, an instrumentality of such character and of such material and construction as to be in itself a spring, which properly controls the connections, contacts, and operation. The yielding effect is so almost infinitesimally slight that it cannot be perceived by the naked eye. Concerning this, the Court of Appeals has held that the patent is entitled to a broad construction; that "any yielding connection answers the calls of this element"; that the then appellee "makes use of springs"; but that "the springs may be differently located." To give full force to this language, this court must hold that the construction of defendant is within the claim so interpreted.

Defendant contends, however, that its construction finds authorship in art prior to plaintiff, not presented to the court on former hearings, and introduces prior patents as follows: (1) Bonham, 458,944, a hand clipper with no "yielding driving connection"; (2) Drysdale, 574,243, of similar character and similarly limited; (3) Wantz, 703,100, a motor driven massage vibrator, without yielding connection and clearly within Stearns, 1,158,741, and Niland, 1,329,-675, before the court in the previous trials; (4) Cornu, 726,795, without the essential yielding connection; (5) Golden, 892,249, similarly lacking and of no higher or greater value than Golden, 924,043, which was before the court in the former hearing; (6) Wahl, 1,149,099, a vibrator, not pertinent here; (7) Coffman, 1,165,945, without any yielding driving connection and similar to Stearns, a file reference upon the patent involved herein; and (8) Packwood, 1,281,-214, of similar character. None of these teaches us what is disclosed in defendant's device or in plaintiff's patent, so far as the element of "yielding driving connection" is concerned.

As to prior use, defendant offered the testimony of Golden, who testified that he and others built vibrators in accord with his patent's teachings. He did not use a yielding connection. Defendant had constructed its conception of Golden's device and then added to it, its construction of its conception of Niland's hair clipper. When

operated in the courtroom, the resulting noise was such as to prevent commercial success. It included no yielding connection. The witness testified also that he attached his device to defendant's hand clipper, with no substantial success. Admittedly, it contained no yielding driving connection.

A reconstructed Niland device was operated before the court. The result was a disagreeable clatter, fatal to success. The connection there is loose, resulting in play, producing noise, friction and wear. The patent was before the court previously, and the new evidence is not of such character as to inspire any conclusion with reference thereto different from that in previous cases.

Defendant introduced in chronological order hand and motor clippers manufactured by it. None of them included any yielding driving connection, under any possible construction of those words, until within the lifetime of plaintiff's patent. Nothing in the operation of these devices and of combinations thereof or elsewhere in testimony inspires the court to find that anything in the prior art taught either the plaintiff or defendant what is embodied within their respective devices in the way of yielding driving connections.

I find, therefore, that the device of defendant is within claim 2 sued upon, as heretofore construed by this court and by the Court of Appeals upon review; that so to construe the claim does not bring it in conflict with any prior patent or use; and that the claim is valid and infringed.

Proper decree for injunction and accounting may be submitted.